IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARLENE TURNER**, <br><br> Plaintiff, <br><br> v. <br><br> **ABINGTON/JEFFERSON HOSPITAL, et al.**, <br><br> Defendants. | CIVIL ACTION <br><br> NO. 21-565-KSM |

## MEMORANDUM

**MARSTON, J.**                                                                April 9, 2021

      This matter involves a *pro se* plaintiff seeking to proceed *in forma pauperis* and requesting the appointment of counsel in an employment discrimination action. (Doc. Nos. 1–3.) In her complaint, Plaintiff Darlene Turner asserts claims against her former employer and its Human Resources directors and managers—Defendants Abington/Jefferson Hospital and Abington Hospital H.R.,[1] respectively (collectively, "Defendants")—under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634. (Doc. No. 2 at p. 1.)

      Turner, a 57-year-old African American, alleges that Defendants discriminated against her due to her race, religion, and age. (*Id.* at pp. 2–4.) Turner alleges that she was wrongfully terminated after having worked for Defendants for over 33 years, and that over the past five years, Defendants "set [her] up to fail," such as by falsely accusing her of taking drugs and "doing things that never happen [sic]," and retaliated against her after she complained to the

---

[1] The case caption lists "Manager of MBU Martina Ward, Director of MBU Carol Chwall, [and] Manager of Labor and Delivery Regina Dooner" in parentheses under Defendant Abington Hospital H.R.

Equal Employment Opportunity Commission ("EEOC") about bullying and harassment. (*Id.* at p. 3.) Turner also claims that her director called her the n-word, that she was told she "couldn't say Satin [sic] the Lord rebuke you, regarding [her] religion," and that a nurse asked if she "had any panties on." (*Id.*)

At this stage, the Court must consider first, whether to permit Turner to proceed *in forma pauperis*; second, whether Turner's complaint passes muster under the screening process mandated by 28 U.S.C. § 1915(e) for indigent litigants; and third, whether to grant Turner's motion for appointment of counsel.

For the reasons that follow, although the Court will grant Turner's motion to proceed *in forma pauperis*, the Court will dismiss her complaint with leave to amend and deny her motion for appointment of counsel without prejudice.

**I.      IFP Application**

Pursuant to 28 U.S.C. § 1915(a), federal courts may authorize the commencement of a civil action, "without prepayment of fees or security," by a plaintiff "who submits an affidavit that includes a statement of all the assets [he] possesses," showing that he is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1); *see also Chain v. Gross*, Civil Action No. 18-4610, 2018 WL 5631642, at *1 (E.D. Pa. Oct. 31, 2018) ("§ 1915(a) allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit." (quotation marks and citations omitted)). If, upon "review [of] the affiant's financial statement," the court is "convinced that [the plaintiff] is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Chain*, 2018 WL 5631642, at *2 (quotation marks and citation omitted).

Here, after reviewing Turner's IFP application (*see* Doc. No. 1), it appears that she is unable to pay the costs of bringing this lawsuit. Therefore, we will grant her leave to proceed *in forma pauperis*.

## II. § 1915 Screening

### A. Legal Standard

Because this Court has granted Turner leave to proceed *in forma pauperis*, we are statutorily mandated by 28 U.S.C. § 1915 to conduct a preliminary review (i.e., screening) of this action. *See, e.g., Feingold v. Brooks*, 791 F. App'x 325, 325–26 (3d Cir. 2020) (affirming the court's decision to *sua sponte* dismiss a time-barred claim when conducting "the screening process mandated by 28 U.S.C. § 1915 for litigants proceeding *in forma pauperis*"); *Smith v. Shop Rite*, Civil Action No. 3:17-cv-0907, 2018 WL 2424136, at *2 (M.D. Pa. May 9, 2018) ("This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by litigants given leave to proceed *in forma pauperis*."). Accordingly, the Court must review Turner's complaint and dismiss her lawsuit if the action is frivolous or malicious; the complaint fails to state a claim on which relief may be granted; or the action seeks money damages from an immune defendant. 28 U.S.C. § 1915(e)(2); *Chain*, 2018 WL 5631642, at *2; *see also Berkery v. Gudknecht*, 763 F. App'x 288, 288 (3d Cir. 2019) ("Section 1915(e)(2) provides that a district court 'shall dismiss the case at any time if the court determines that' the case 'fails to state a claim on which relief may be granted.'").

In evaluating whether to dismiss the plaintiff's complaint for failure to state a claim under § 1915(e), the Court applies the same standard used for motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Muchler v. Greenwald*, 624 F. App'x 794, 797 (3d Cir. 2015); *see also White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019). Therefore, the Court must

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  Although the Court must accept as true the allegations in the complaint, we are not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).

"While a plaintiff's factual allegations must be enough to raise a right to relief above a speculative level, complaints filed *pro se* must be liberally construed."  *Muchler*, 624 F. App'x at 797 (quotation marks and citations omitted)); *see also Smith*, 2018 WL 2424136, at *2 (noting that although "[a] complaint by a pro se litigant is to be liberally construed," "pro se litigants still must allege sufficient facts in their complaint to support a claim" (quotation marks and citations omitted)); *Veney v. Am. Eagle Outfitters*, 2:20-cv-63-NR, 2020 WL 588126, at *2 (W.D. Pa. Feb. 6, 2020) ("Since [the plaintiff] is currently unrepresented by counsel, the Court will liberally construe his allegations and hold him to a less stringent standard than that applied to pleadings filed by attorneys.  The Court, however, need not credit a *pro se* plaintiff's bald assertions or legal conclusions." (quotation marks and citations omitted)).

**B.     Application**

Even when liberally construed, the Court finds that Turner's complaint must be dismissed, because she has not set forth enough facts to state claims for race, religion, or age discrimination or retaliation.  Such dismissal will be without prejudice and with leave to amend to cure the deficiencies outlined below.

To state a *prima facie* case of religious discrimination, a plaintiff must show that "(1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her

4

employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement." *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009) (citation omitted). None of Turner's allegations come close to satisfying those elements. In fact, the only allegation plausibly connected to Turner's religious discrimination claim is her statement that she was told that she "couldn't say Satin [sic] the Lord rebuke you, regarding [her] religion." (Doc. No. 2 at p. 3.) But Turner fails to allege who told her she could not make that statement or what her religion is, let alone what sincere religious belief she held and how that religious belief conflicted with a job requirement, or that she brought such a conflict to her employer.

The Court also cannot conclude that Turner has plausibly pled her age discrimination claim. To state a *prima facie* case of age discrimination under the ADEA, a plaintiff must allege that "(1) [she] is at least forty years old; (2) [she] suffered an adverse employment decision; (3) [she] was qualified for the position in question; and (4) [she] was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a retaliatory motive." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citation omitted); see *also Retzler v. McDonalds*, Civil Action No. 20-CV-1256, 2020 WL 1164797, at *2 (E.D. Pa. Mar. 10, 2020). Turner has pled that she is 57 and was terminated, thereby satisfying the first two elements. Although Turner alleges that she worked at Abington/Jefferson Hospital for the past 33 years, nowhere in her complaint does she state the job title she held during that time or otherwise describe the position or the duties that she performed in any way. (Doc. No. 2.)[2] Without knowing Turner's position, duties, and qualifications, it is difficult for

---

[2] The Court notes that in her complaint, Turner alleges that she "saved 2 babies from chocking [sic] and more but it's not documented in any evaluations of any good deeds." (*See* Doc. No. 2 at p. 3.) However, she does not state that she was a nurse or a medical assistant or practitioner, and appears to characterize this as a "good deed" rather than a job duty.

The Court also notes that Turner does not describe the position she held at Abington/Jefferson Hospital in

this Court to find that she has adequately pled that she was qualified for her job at Abington/Jefferson Hospital. *See Veney*, 2020 WL 588126, at *3 ("There is no way of knowing whether [the plaintiff] was qualified for the position at American Eagle because he has not described the position in any way. Mr. Veney has not included in his filings the job title or the duties he would have been expected to perform had American Eagle hired him. Nor has [the plaintiff] pled his qualifications for the job at American Eagle—the complaint contains no descriptions of his prior relevant experience or the personal attributes that would have made him well-suited for the position."). And even if Turner was qualified, Turner's age discrimination claim still is not plausible because she has not pled that she was replaced by someone "sufficiently younger."[3] Turner merely alleges, "[w]hen the last schedule came out for me to work, I was not on [it]. Someone else was in my spot who was younger." (Doc. No. 2 at p. 3.) But Turner does not allege how old her replacement was or even approximate his or her age group—"younger" could encompass a wide range of ages, including someone only a few months or years younger.

Next, the Court finds that Turner has not pled a plausible race discrimination claim. To support her race discrimination claim, Turner alleges that her director, Carol Chwall, called her the "n-word." (*Id.*) To state a *prima facie* case for a race discrimination claim, a plaintiff must show that "(1) [she] is a member of a protected class; (2) [she] was qualified for the position in question; (3) [she] suffered an adverse employment action; and (4) that adverse employment

---

her motion to proceed *in forma pauperis* (*see* Doc. No. 1 at p. 2 (listing prior employer but not prior position)) or in her motion to appoint counsel (*see* Doc. No. 3).

[3] Turner alleges, "When the last schedule came out for me to work, I was not on [it]. Someone else was in my spot who was younger." (Doc. No. 2 at p. 3.) Although a close call, we find that this falls short of satisfying the "sufficiently younger" element.

6

action gives rise to an inference of unlawful discrimination." *Veney*, 2020 WL 588126, at *2 (quoting *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016)). Turner alleges that she is African American and was terminated, satisfying the first and third elements. But, for the reasons discussed above, the Court cannot conclude that Turner has shown that she was qualified when her position remains unknown to the Court. Furthermore, although Turner alleges that her director called her the n-word, she does not state whether her director had any role in her termination, the timing of when her director called her the n-word versus when she was terminated, or any other facts suggesting that her termination was the result of racial animus.[4]

In addition, the Court finds that Turner has not plausibly pled a retaliation claim. To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her after or contemporaneously with her protected activity; and (3) there was a causal connection between her protected activity and the adverse employment action. *Moore v. City of Philadelphia,* 461 F.3d 331, 340–41 (3d Cir. 2006) (citation omitted). Turner asserts that she was "being retaliate[d] against . . . for going to [the] EEOC previously regarding . . . being bullied and harassed" (*see* Doc. No. 2 at p. 4), satisfying the first two elements. But she fails to allege any facts (for example, close temporal proximity between the charge and her termination) to establish

---

[4] In addition, Plaintiff alleged that a nurse asked "if [she] had on any panties," and that she "was told to shut [her] mouth" and "not to talk to an employee." (Doc. No. 2 at p. 3.) She also claims that she was "falsely accused of taking drugs" and "of doing things that never happen[ed]." (*Id.* at pp. 3–4.) But she does not describe how these statements connect to or support her claims that she was discriminated against *based on her race, religion, or age*. *See, e.g.*, *Tonic v. Tastepoint N.*, Civil Action No. 18-3482, 2018 WL 3995958, at *2 (E.D. Pa. Aug. 21, 2018) (holding that the plaintiff did not state a claim under the federal statutes prohibiting employment discrimination and retaliation where she did not allege that the "discrimination or harassment was due to her membership in a protected class").

7

a nexus between her protected activity and her termination. In sum, Turner's allegations are conclusory and do not support a retaliation charge.

Moreover, to the extent that the complaint may be read to assert a hostile work environment claim under either the ADEA or Title VII, that is also implausible. To state a *prima facie* case for a hostile work environment claim, the plaintiff must establish: "(1) the employee suffered intentional discrimination because of [her race, religion, or age]; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013); *see also Retzler v. McDonalds*, Civil Action No. 20-CV-1256, 2020 WL 1164797, at *3 (E.D. Pa. Mar. 10, 2020). Here, the Court has difficulty finding severity or pervasiveness for Turner's religious or age discrimination claims, where Turner has alleged no facts indicating that she was discriminated against based on her religion, and only alleges that on the last schedule, she was replaced by someone who is indeterminately "younger" than her.

As for her race discrimination claim, Turner's sole allegation is that her director called her the n-word. The use of this word must be condemned, and it may be that this singular instance is sufficiently severe to establish a claim of racial discrimination; however, the Court is required to consider the context. *See, e.g.*, *Castleberry*, 863 F.3d at 266 (noting that "resolution" of the question over whether a supervisor's single use of the n-word is adequately severe "is context-specific" and concluding that the plaintiffs had pled sufficiently severe conduct where they "alleged that their supervisor used a racially charged slur in front of them and their non-African American coworkers. Within the same breath, the use of this word was accompanied by threats of termination (which ultimately occurred)"). But here Turner provides no context—the

8

"n-word" allegation appears in a vacuum and Turner does not specify when it occurred in relation to other allegedly discriminatory or harassing behavior. And in any event, Turner has not pled sufficient facts for the Court to find the existence of *respondeat superior* liability. Although Turner states that she was "told" a number of different things and "falsely accused" of stealing drugs and "doing things that never happen[ed]," she does not specify who made such statements or accusations, what their position was in relation to her, who supervised her, and so on.

Finally, to the extent that Turner seeks to bring ADEA or Title VII claims against any Defendant other than her former employer Abington/Jefferson Hospital,[5] such claims "are not plausible because [Turner's] individual co-workers and supervisors were not [Turner's] employer." *Retzler*, 2020 WL 1164797, at *3 (citing Fourth and Sixth Circuit cases for the propositions that the "ADEA limits civil liability to the employer and therefore individual supervisors are not proper defendants" and "Title VII does not provide for individual liability").

In sum, because Turner has failed to allege sufficient facts to support her claims, the Court must dismiss her complaint pursuant to § 1915(e), without prejudice.

## III.  Request to Appoint Counsel

Turner completed the standard Request for Appointment of Attorney form used in Title VII cases, by which she requests appointment of counsel as provided by 42 U.S.C. § 2000e-5(f)(1). (*Id.*) Because Turner is an indigent litigant, the Court also considers her motion under 28 U.S.C. § 1915, the *in forma pauperis* statute.

---

[5] As noted *supra* n.1, "Manager of MBU Martina Ward, Director of MBU Carol Chwall, [and] Manager of Labor and Delivery Regina Dooner" are listed in parentheses under Defendant Abington Hospital H.R. in the case caption.

### A. Legal Standards: Appointment of Counsel

"[I]ndigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (citing *Parham v. Johnson*, 126 F.3d 454, 456–57 (3d Cir. 1997)). However, 42 U.S.C. § 2000e-5(f)(1) grants district courts the discretion to appoint counsel in Title VII cases. 42 U.S.C. § 2000e-5(f)(1) ("Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant[.]"); *see also Gude v. Rockford Ctr. Inc.*, 393 F. App'x 838, 839 (3d Cir. 2010) ("[D]istrict courts have the discretion to appoint counsel in Title VII cases."); *Paramore v. Pa. State Police*, Civil Action No. 06-5316, 2007 WL 1302404, at *2 (E.D. Pa. Apr. 26, 2007) ("Although [the plaintiff] does not have a statutory or constitutional *right* to an attorney in a civil case, the Court has the authority to appoint him one under Title VII."). In addition, pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see also Montgomery*, 294 F.3d at 498 ("Congress has granted district courts statutory authority to 'request' appointed counsel for indigent civil litigants.").

The Third Circuit has recognized a two-step process for courts to use when analyzing requests for appointment of counsel. As a threshold matter, the Court must first consider whether the plaintiff's claim has any merit. *See, e.g.*, *DiGenova v. Unite Here Local 274*, 673 F. App'x 258, 261 (3d Cir. 2016) (affirming district court's denial of the plaintiff's request for appointment of counsel "because none of [the plaintiff's] filings suggest that he has any potentially meritorious claim" and citing to *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993), which "address[ed] appointment of counsel under 28 U.S.C. § 1915" and *Ficken v. Alvraez*, 146 F.3d 978 (D.C. Cir. 1998), which "address[ed] appointment of counsel under" the Title VII statute);

10

*Mentor v. Hillside Bd. of Educ.*, 428 F. App'x 221, 224 (3d Cir. 2011) ("Regardless of whether we review the District Court's order [denying the plaintiff's motion to appoint counsel] under *Tabron* or § 2000e-5(f)(1), [the plaintiff] must show as a threshold matter that her claim had merit.").

If the court determines that the plaintiff's claim has some arguable merit in fact or law, the court should then weigh additional factors bearing on the need for appointed counsel. *See, e.g.*, *Montgomery*, 294 F.3d at 498–99; *Gude*, 393 F. App'x at 839–40. In *Tabron v. Grace*, the Third Circuit outlined the following six factors for courts to consider in the § 1915 context:

> (1) the plaintiff's ability to present his or her own case;
> (2) the difficulty of the particular legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the plaintiff's capacity to retain counsel on his or her own behalf;
> (5) the extent to which a case is likely to turn on credibility determinations; and
> (6) whether the case will require testimony from expert witnesses.

*Montgomery*, 294 F.3d at 498–99 (citing *Tabron*, 294 F.3d at 155–57). Many courts consider these same factors when evaluating whether to appoint counsel in the Title VII context. *See, e.g.*, *Kerr v. Christian Care Health Sys.*, Civ. No. 10-1084, 2010 WL 1047808, at *2–3 (E.D. Pa. Mar. 19, 2010) (exclusively applying *Tabron* factors to the plaintiff's request for appointment of counsel in a Title VII action); *Paramore*, 2007 WL 1302404, at *2 (discussing the need to consider the *Tabron* factors in evaluating the plaintiff's request for an attorney in a Title VII case).

However, the Third Circuit has on at least one occasion, albeit in a non-precedential opinion, cautioned against solely relying on the *Tabron* factors in Title VII cases. *See Mentor*, 428 F. App'x at 223–24 (finding that the district court erred when it "focused on the analysis set out in *Tabron v. Grace*" when evaluating the plaintiff's request for counsel to assist her in

11

prosecuting her Title VII claims). In contrast, the Third Circuit has cited approvingly to the factors set forth in *Ficken v. Alvarez*, 146 F.3d 978 (D.C. Cir. 1998) when evaluating motions for appointment of counsel in the Title VII context under § 2000e-5(f)(1). *See, e.g.*, *Mentor*, 428 F. App'x at 223–24 (stating that *Ficken* "enumerat[es] [the] test to apply in ruling on a motion for counsel under § 2000e-5(f)(1)); *DiGenova*, 673 F. App'x at 261 (noting that *Ficken* "address[es] appointment of counsel under § 2000e-5(f)(1)"). Those factors are: "(1) the ability of the plaintiff to afford an attorney; (2) the merits of the plaintiff's case;[6] (3) the efforts of the plaintiff to secure counsel; and (4) the capacity of the plaintiff to present the case adequately without the aid of counsel."[7] *Ficken*, 146 F.3d at 980; *see also Brown v. O'Shea*, No. CIV. A. 99-471, 1999 WL 124361, at *1 (E.D. Pa. Feb. 9, 1999).

**B.    Application**

Because the Court is dismissing Turner's complaint for failure to state a claim, "by definition, [she] cannot show that [her] claims, as currently pled, have some merit in fact or law." *Veney*, 2020 WL 58812, at *4. As such, we will deny Turner's motion for appointment of counsel, without prejudice. *See id.* (denying the plaintiff's request for appointment of counsel where the court dismissed the plaintiff's complaint for failure to state a claim under Title VII or the Pennsylvania Human Relations Act); *Tonic*, 2018 WL 3995958, at *2 (denying the plaintiff's motion for appointment of counsel without prejudice, where the court also dismissed the

---

[6] We note that although the Third Circuit has recognized that, as a threshold matter, district courts should consider the merits of the plaintiff's claims when evaluating requests for appointment of counsel brought pursuant to § 2000e-5(f)(1) before turning to the factors, *see DiGenova*, 673 F. App'x at 261; *Mentor*, 428 F. App'x at 224, *Ficken* sets forth the merits of plaintiff's case as its own factor.

[7] The fourth factor of the *Ficken* test overlaps with the first *Tabron* factor. *See, e.g.*, *Gude*, 393 F. App'x at 840 ("In the in forma pauperis context, we have recognized that the plaintiff's ability to present his or her case is an important consideration. Other courts have found that factor relevant under 42 U.S.C. § 2000e-5(f)(1) as well, and we will assume without deciding that it is." (citations omitted)).

plaintiff's complaint without prejudice for failure to state a claim); *Retzler*, 2020 WL 1164797, at *5 (denying the plaintiff's motion for appointment of counsel where the court dismissed the plaintiff's ADEA and Title VII claims for failure to state a claim).

To the extent that Turner re-files an amended complaint, she may also re-file a motion for appointment of counsel. Plaintiff should bear in mind that, if she re-files a motion for appointment of counsel, she should include more detail as to the efforts she has undertaken to employ an attorney to show the Court that she has been diligent. Currently, Turner only indicates that she reached out to two private attorneys, but failed to provide all the information the form requested.[8] Taken together, Turner has not shown the Court that she exhibited diligence in finding representation. *See, e.g.*, *Enders/Maden v. Super Fresh*, Civil Action No. 05-669-JJF, 2006 WL 8459968, at *1 (D. Del. Nov. 17, 2006) (denying the plaintiff's motion for appointment of counsel where the plaintiff "has not indicated that she has made efforts to obtain counsel or that she sought assistance from organizations that frequently offer assistance to pro se indigent litigants with meritorious claims"); *Butz v. Lawns Unlimited Ltd.*, Civil Action No. 05-495-JJF, 2006 WL 8459821, at *1 (D. Del. Nov. 16, 2006) (denying the plaintiff's motion to appoint counsel and noting that "although Plaintiff has indicated that, in seeking representation, she has contacted numerous attorneys without success, Plaintiff has not indicated that her search was exhaustive or that she sought assistance from organizations that frequently offer assistance to pro se litigants with meritorious claims").

---

[8] For example, Turner did not include her name on the Petitioner/Plaintiff line (Doc. No. 3 at p. 1) or "state why each [private attorney] contacted is not representing [her]" (*see id.*). Turner also failed to specify which legal aid organizations she contacted, when she contacted those organizations, and why they did not assist her. (*Id.*) Further, she did not indicate whether she contacted any bar association referral services (*id.*) or give her employer's name and address (*see id.* at p. 2).

13

## IV. Conclusion

For the foregoing reasons, we grant Turner's motion to proceed *in forma pauperis*, dismiss her complaint without prejudice, and deny her motion for appointment of counsel without prejudice.

An appropriate order follows.